J-S37003-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: C.M., MOTHER | : | |
| | : | |
| | : | No. 499 EDA 2019 |

Appeal from the Order Entered January 15, 2019
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-DP-0000306-2014

| | | |
|---|---|---|
| IN THE INTEREST OF: J.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: C.M., MOTHER | : | |
| | : | |
| | : | No. 500 EDA 2019 |

Appeal from the Order Entered January 15, 2019
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0000643-2017

BEFORE:  BOWES, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                    **Filed: August 22, 2019**

C.M. ("Mother") files these consolidated appeals from the decree entered on January 15, 2019 granting the petitions filed by the Philadelphia Department of Human Services ("DHS") to involuntarily terminate Mother's

parental rights to her dependent son, J.M., pursuant to the Adoption Act[1] and the order entered on January 15, 2019 changing J.M.'s permanent placement goal to adoption pursuant to the Juvenile Act. We affirm.

J.M. was born in January 2013. He came into DHS care during February 2014, pursuant to an order for protective custody as a result of Mother's substance abuse and mental health problems.[2] N.T., 1/15/19, at 38. He was adjudicated dependent on February 12, 2014. *Id*.

Permanency review hearings were held on May 14, 2014, August 6, 2014, October 29, 2014, January 28, 2015, April 30, 2015, May 15, 2015, August 6, 2015, October 29, 2015, February 22, 2016, May 19, 2016, August 19, 2016, November 18, 2016, April 6, 2017, June 29, 2017, September 13, 2017, December 21, 2017, March 22, 2018, May 31, 2018, July 24, 2018, and October 18, 2018. Throughout the ensuing permanency review hearings between May 2014 and October 18, 2018, the court maintained J.M.'s commitment and placement. *See* DHS Exhibit 3.

On June 14, 2017, DHS filed petitions to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b),

---

[1] By separate decree entered the same date, the trial court involuntarily terminated the parental rights of J.M.'s father, A.W. ("Father"). Father did not appeal.

[2] Mother previously had two children removed from her care as a result of substance abuse and domestic violence. Neither of these children, Q.W. and S.G., is the subject of this appeal.

and to change J.M.'s goal to adoption. At the evidentiary hearing,[3] DHS presented the testimony of William Russell, Ph.D., the forensic and clinical psychologist who conducted a bonding evaluation of Mother; and Rodney Hill, DHS social worker. DHS additionally presented DHS Exhibits 1 through 9, which were admitted without objection. N.T., 1/15/19, at 7-8. Mother, who was present and represented by counsel, testified on her own behalf. During this proceeding, J.M.'s legal interest was represented by Timothy McCullough, Esquire, and J.M.'s best interests were represented by guardian *ad litem*, Carla Beggin, Esquire.[4]

By decree and order entered January 15, 2019, the trial court involuntarily terminated the parental rights of Mother to J.M. pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b), and changed his permanent placement goal to adoption.[5] On February 14, 2019, Mother, through appointed counsel, filed timely notices of appeal, as well as concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which were consolidated *sua sponte* by this Court on March 19, 2019.[6]

---

[3] The trial court continued the termination of parental rights hearing several times over nineteen months to allow Mother to obtain drug and alcohol counseling, which she neglected to complete.

[4] Neither attorney filed a brief in this appeal.

[5] This decree memorialized the decision placed by the court on the record at the conclusion of the hearing. N.T., 1/15/19, at 83-85.

[6] Mother complied with Pa.R.A.P. 341 by filing separate notices of appeal listing the docket numbers assigned to both the dependency proceeding and the contested involuntary termination, respectively. **See** Pa.R.A.P. 341, Note ("Where . . . one or more orders resolves issues arising on more than one

Mother raises the following issue for our review:

1.      Did the trial court err in changing the goal to adoption and terminating [Mother]'s parental rights because the Department of Human Services failed to establish by clear and convincing evidence that [Mother] cannot or will not be able to remedy the incapacity and conditions which led to [J.M.]'s removal[?]

Mother's brief at 3.[7]

In matters involving involuntary termination of parental rights, our standard of review is as follows:

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id*. "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id*. The

_____

docket or relating to more than one judgment, separate notices of appeal must be filed."); *Commonwealth v. Walker*, 185 A.3d 969, 977 (Pa. 2018) (holding that the failure to file separate notices of appeal from an order resolving issues on more than one docket "requires the appellate court to quash the appeal").

[7] While Mother purports to challenge the goal change, she abandoned this issue by failing to present any individualized argument contesting the goal change order. Moreover, to the extent that Mother attempted to incorporate a challenge to the goal change into her primary argument concerning the termination of parental rights, that claim fails for the identical reasons we set forth in the body of this memorandum. Stated succinctly, the certified record confirms that the change of the permanency goal to adoption was in J.M.'s best interests insofar as J.M. has been in care for approximately five years, Mother failed to complete court-ordered mental health treatment and drug and alcohol treatment, and her irregular attendance at visitation was detrimental to J.M.'s behavior health.

trial court's decision, however, should not be reversed merely because the record would support a different result. ***Id***. at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. ***See In re R.J.T.***, [9 A.3d 1179, 1190 (Pa. 2010)].

***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." ***In re M.G. & J.G.***, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." ***In re Adoption of T.B.B.***, 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is governed by § 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

Our case law has made clear that under [§] 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [§] 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [§] 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (quoting *Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)).

In the case *sub judice*, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). In order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of § 2511(a), as well as § 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, we analyze the court's termination decrees pursuant to § 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights

of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), and (b).

We first address whether the trial court abused its discretion by terminating Mother's parental rights pursuant to § 2511(a)(2).

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa.Super. 2015) (quoting *In re A.L.D.,* 797 A.2d 326, 337 (Pa.Super. 2002)). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. . . . [A] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re A.L.D.*, *supra* at 340 (internal quotation marks and citations omitted).

- 7 -

In finding grounds for termination of Mother's parental rights pursuant to, *inter alia*, § 2511(a)(2), the trial court "found that clear and convincing evidence was presented by DHS under 23 [Pa.C.S. §] 2511(a)(1), (2), (5), (8) and [§] 2511(b) to terminate Mother's parental rights as to [J.M.] . . . . in the form of testimony that was clear, direct, weighty, and convincing[.]" Trial Court Opinion, 4/9/19, at 25. Specifically, the court explained,

> This [c]ourt's decision to terminate Mother's parental rights to [J.M.] was based on clear and convincing evidence which established that Mother had failed to perform parental duties, and she lacks the present capacity to perform those parental responsibilities. This [c]ourt found that DHS proved by clear and convincing evidence that Mother is incapable or providing safety and permanency for her [c]hild now and in the future. This [c]ourt is not persuaded that Mother can or will remedy the conditions which continue to exist and which brought [J.M.] into supervision. Mother continues to use drugs, does not have appropriate housing, employment and does not attend mental health therapy. Based on the clear and convincing evidence presented, this [c]ourt terminated Mother's parental rights pursuant to 23 [Pa.C.S §] 2511(a)([2])[.]

*Id*. at 27-28.

Mother, however, argues that she is able to remedy her incapacity. Her argument, in its entirety is as follows:

> Here, the record shows that [Mother] is able to remedy the parental incapacity. [Mother] had recently acquired housing and had a means of supporting [J.M.]. [Mother] also was able to control her substance abuse when she was in treatment and only began missing her mental health treatment when she relocated residence. In the totality of circumstances, [Mother] has demonstrated that she will be able to remedy her parental incapacity within a reasonable period of time and that she did not have a settled purpose of relinquishing her parental claim.

Mother's brief at 9.

While we note with disapproval the lack of detailed analysis with citation to the record in Mother's argument, we decline to find waiver.[8] Although woefully deficient, Mother presents a discernable argument that does not impede our meaningful review.

The certified record supports the trial court's decision to terminate parental rights pursuant to § 2511(a)(2). As we explain *infra*, the record reveals that Mother failed to comply with her Family Service Plan ("FSP") goals aimed at reunification with J.M.

DHS social worker, Rodney Hill, recounted Mother's FSP objectives involved housing, drug and alcohol and mental health treatment, visitation, and employment. N.T., 1/15/19, at 38-39. He testified that these had consistently remained Mother's objectives throughout the life of the case and that Mother was aware of these objectives and the necessity for completion in order to obtain reunification. *Id*. at 39-40. Further, Mother acknowledged and indicated that she was in fact aware of these objectives. *Id*. at 69.

While conceding that Mother had engaged in mental health treatment, Mr. Hill stated that Mother never successfully completed a mental health

_____

[8] **See** Pa.R.A.P. 2101 (stating, "Briefs and reproduced records shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed. . . .); **In re A.C.**, 991 A.2d 884, 897 (Pa.Super. 2010) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").

treatment program or provided verification of completion of a program.[9] *Id.* at 40-41. When questioned therefore as to a specific mental health diagnosis and the necessity for mental health treatment, Mr. Hill responded, "Oh, she does have mental health [concerns]. I don't have it in front of me. But Mother states she has anxiety, PTSD [Post-traumatic Stress Disorder]. I don't have any other evaluation in front of me because every time we try to get Mom to do a dual diagnosis, she never completes anything." *Id*. at 66.

Similarly, as to drug and alcohol treatment, despite Mother participating in numerous treatment programs, Mr. Hill testified that Mother failed to provide documentation that she completed any program. *Id*. at 43-44, 66-67. Rather, Mother has a pattern of engaging in programs and then leaving. *Id*. at 65, 67. He explained, "She"ll go. And then she'll leave. She never completes any programs." *Id*. at 65. As to Mother's inability to complete a treatment program, Mr. Hill continued, "I was informed by the CBH [Community Behavioral Health] worker for her –the last program, they said that would be it for her because she's been in and out of so many different programs that they were not going to allow her to come in anymore if she didn't complete." *Id*. at 67. Mother also did not consistently present for court-ordered drug and alcohol screens, and she tested positive on numerous occasions when she did present. *Id*. at 43; *see also* DHS Exhibit 8. Indeed,

---

[9] Mother admitted that she was not in treatment at the time of the hearing, but indicated that she was current with her medication. *Id*. at 71.

she not only tested positive for phencyclidine ("PCP"), benzodiazepines, and cocaine as recently as December 27, 2017, but she also admitted to a relapse and use of PCP and crack cocaine a mere three-and-a-half weeks prior the hearing. *Id*. at 78-79; DHS Exhibit 8.

Further, Dr. Russell observed that, despite Mother indicating that she then had not used drugs in several months at the time of his evaluation, she "had difficulty focusing, presented with poor eye contact, and appeared lethargic." DHS Exhibit 6 at 3. He stated, "[h]er presentation was very much like that of an addict" in that she blamed others for her predicament. N.T., 1/15/19, at 18. Dr. Russell testified, "Everything was about her in that she had nothing to do with the original removal of the child; it had nothing to do with her behavior. She had nothing to do with the removal and placement of her other two children; it was based on other people's behavior." N.T., 1/15/19, at 18-19. He further stated that Mother reported that one of the reasons that she missed several visitations was that it upsets her and "she's afraid she'll go get high" to feel better. *Id*. at 18.

With regard to housing, Mr. Hill noted that he did not know where Mother was living at the time of the hearing and the she has never obtained suitable housing, stating, "[s]ince I've been on the case, Mother's housing -- she's never had a permanent address." *Id*. at 44-45. Likewise, Mr. Hill was unaware if Mother was employed and noted no documentation as to employment. *Id*. at 46.

Lastly, Mother's visitation was inconsistent. For example, as of July 2018, Mother had not attended visitation with J.M. since March 2018. N.T., 1/15/19, at 19; DHS Exhibit 6, at 3, 6. Mother's irregular attendance caused J.M. to experience severe behavioral problems after visits would take place. N.T., 1/15/19, at 16, 18-20, 46-47, 56. As Mr. Hill stated, "[J.M.] would be upset. I mean, the visits were not consistent. So, at times [J.M.] would see his mother. Then he wouldn't see his mother. Then she would reappear again. Then she wouldn't see him again. And it really upset him." *Id*. at 56. J.M. "was just all over the place; throwing tantrums, hollering, and screaming." *Id*. at 47-48. Visitation, therefore, was not expanded, but was reduced in frequency and, in fact, suspended.[10] *Id*. at 46-47; *see also* DHS Exhibit 3. At the time of the hearing, visitation remained suspended. *See* DHS Exhibit 3. Tellingly, Mr. Hill testified that J.M.'s behavior improved since the suspension. N.T., 1/15/19, at 56. This is significant because observing improvements in behavior in relation to the suspended visitations is the "only way you can really make a determination that the visit[s] [are] negatively impacting the child." *Id*. at 20. As such, Mr. Hill expressed concerns about J.M. being in Mother's care. *Id*. at 46. He explained, "Well, [Mother] has – there's mental health issues. There's D[rug] and A[lcohol] issues, all

_____

[10] Mother's visitation was also briefly suspended from August to October 2015 due to CEU non-compliance. *See* DHS Exhibit 3; *see also* N.T., 1/15/19, at 47.

unaddressed. And I don't think that it would be in [J.M.'s] best interest." *Id.* at 46.

As this Court has stated, "[A] child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa.Super. 2006). Hence, the record substantiates the conclusion that Mother's repeated and continued incapacity, abuse, neglect, or refusal has caused J.M. to be without essential parental control or subsistence necessary for his physical and mental well-being. *See In re Adoption of M.E.P.*, *supra* at 1272. Moreover, Mother cannot or will not remedy this situation. *See id*.

We next determine whether termination was proper under § 2511(b). Mother, however, failed to present any argument and/or discussion related to § 2511(b) in her brief. As such, Mother waived a challenge related to § 2511(b). *See In re W.H.*, 25 A.3d 330, 339 n.3 (Pa.Super. 2011); *see also In re M.Z.T.M.W.*, 163 A.3d 462, 465-66 (Pa.Super. 2017). Nevertheless, in an abundance of caution we reviewed the certified record and observe that, had Mother preserved this claim, it would fail.

Dr. Russell performed a bonding evaluation, and observed that J.M. exhibited no problem separating from Mother. N.T., 1/15/19, at 16. Specifically, as to the mother-son interaction, Dr. Russell commented, "The

interaction between the two varied from close attention to almost parallel worlds in the sense that the mother was talking about one thing and the child was talking about something else totally different." *Id*. at 15. Noting the facts that Mother had not served in the role of primary caretaker, had a history of substance abuse and missed visitation that impacted J.M. adversely, and lacked parental insight, Dr. Russell opined that termination of Mother's parental rights would not cause irreparable harm to J.M. *Id*. at 16-20; *see also* DHS Exhibit 6, at 6.

Similarly, DHS caseworker, Rodney Hill also testified that there would not be irreparable harm to J.M. resulting from termination of Mother's parental rights. By way of explanation, Mr. Hill stated, "[J.M.] doesn't have bond a with his mother. I mean, you know, she hasn't been in his life on a consistent basis." N.T., 1/15/19, at 60. Rather, Mr. Hill indicated that J.M.'s primary bond was with his foster mother with whom he has resided since being placed. *Id*. at 60. J.M. is "happy" in his foster home and looks to his foster mother for love and support and to meet his needs.[11] *Id*. at 59-60.

While Mother may profess to love J.M., a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super.2010). At the time of the

_____

[11] Mr. Hill testified, however, that J.M.'s foster home was not a pre-adoptive resource. N.T., 1/15/19, at 61. Nevertheless, a pre-adoptive resource had been identified with whom J.M. had several visits that went well. *Id*. at 62.

conclusion of the hearings, J.M. had been in placement for almost five years, a majority of his young life, and is entitled to permanency and stability. As we stated, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id*. at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." ***In re B., N.M.***, 856 A.2d 847, 856 (Pa.Super. 2004) (citation omitted).

Accordingly, for all of the foregoing reasons, we find that the trial court did not abuse its discretion in terminating Mother's parental rights to J.M. pursuant to 23 Pa.C.S. § 2511(a)(2) and (b) and in changing J.M.'s permanent placement goal from reunification to adoption.

Decree and order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/22/19

- 15 -